Thank you, Your Honor, and good morning to you all. Whether and when a child socially transitions as transgender are difficult and critically important decisions that will have repercussions for that child for the rest of the child's life. The plaintiff's parents brought this case to vindicate a well-established principle that it is parents who get to make such decisions for their minor children. As the Supreme Court stated in Parham, children lack the maturity, experience, and capacity for judgment to make life's difficult decisions. The school board, though, wants to carve out an exception for the decisions of whether and when a child should socially transition as transgender. The board's transgender guidelines largely deal with how to treat students who have already transitioned. But parts of the guidelines... Counsel, I hate to interrupt you so early, but we've got limited time. Assume, for the sake of discussion, we agree with your substantive position. Could you address standing? Could you address how parents who, from what I read in allegations, have not alleged their children have a plan or are considering a plan or are transitioning? How do you have standing to challenge the policy? Certainly, Your Honor. Yes, these plaintiff's parents have standing. They have injury in fact right now. What is that injury in fact right now? The Supreme Court in Parents Involved v. Seattle School District specified exactly what that injury is here. Plus, it's more, which I'll explain as well. But in the Seattle case, Parents Involved, the parents were challenging a school policy as being unconstitutional, even though it hadn't yet been applied to their children. And they knew very well in that situation whether or not it had been applied yet. The Supreme Court said, just by virtue of being in the school district where this unconstitutional plan, allegedly unconstitutional, they found it to be unconstitutional, was in force and being in force, they were suffering a current injury and had standing. Just by the virtue of the fact that it might be applied to their children in the future. That's probably your best case, I concede, on standing. I mean, you do have a chain of events that has to happen there, as we have here. But it's an equal protection case. Does that make any difference? It doesn't make any difference for standing purposes, Your Honor. But doesn't the Supreme Court tell us that we look at standing different depending on the theory of constitutional violation? We have different standards for First Amendment cases. For fundamental rights cases, yes. And this is a fundamental right that the parents are putting forward. And so it does demand the highest level of openness towards standing. The point I wanted to make is that our case is much stronger even than the parents-involved versus Seattle school district case. Because of the secrecy aspect of this policy, plaintiff parents want to be involved in making the decision of whether or not their child exhibits this transgender at school and when they might do that. But they don't know whether it's being applied to them right now. How do you deal with the national security cases? Clapper with the Supreme Court, I think, and our Wikipedia case, where there's similarly hidden information. How does that affect your claim? I'm not really familiar with those, Your Honor, so it's hard for me to address them. I do think the FEC versus Aikens case, which talks about not providing information that they didn't have, so they didn't know what the story was. The Supreme Court said there was standing. The allegation was that information existed about the candidates. True, the plaintiffs didn't have it. Here, there's no allegation, at least, that any of the parents' children, that the school has information about the children being part of a plan that is being withheld. That they know of. And that takes us back to the secrecy part that we challenge in what we call the parental preclusion policy. The secrecy policy, just by being in place, has an immediate practical effect because it creates distrust between the parents and the school and, more importantly, distrust between the parents and their children. It affects the familial relationship. So, plaintiff parents want to be involved in any part of the decision of whether their child exhibits as transgender at school. So, what do they do to find out whether that's happening right now? They can't ask the school. The school's policy says, we're not going to tell you if we think you might be unsupportive, and we're hiding the paperwork and special files you can't get access to. So, that takes you to, okay, I'm going to ask my child when she comes home. Are you exhibiting as transgender at school? The child says no. Are you telling me the truth? Or are you keeping it secret from me because you and the school think I might not be supportive? This is affecting parents right now. I think also, Your Honor, you had reference to cases that talk about constitutional violations in the standing context. A legitimate threat to a constitutional right provides standing as well. And here, that is very clear because the Hatton Supreme Court told us there has to be allegations that show a substantial risk, not just that there's a potential threat, but there's a substantial risk of that case. I'm not trying to quiz you on cases that you don't address. I understand that. But the national security cases deal with surveillance of people who suspected or were concerned that they might have been surveilled. And the Supreme Court tells us that without pleading that they had been surveilled, that's not sufficient standing. And so it's not exactly the same, I grant you. And here we plead that we don't know whether it's being applied to our children or not because of the secrecy policy. And we want to be involved in the future. We don't want to be the subject of potential being kept in the dark about this. There are different articulations of the standard in this area, Your Honor, of the threatened injury to a constitutional right. The latest articulation, I believe, by your court, in Kenney v. Wilson, lists several of them that the Supreme Court has laid out. But you have standing as long as the threatened injury is not, and I'm quoting, imaginary or wholly speculative. And in this situation where the board is enforcing this policy and says it's going to continue to enforce it as new cases come about, it's certainly not wholly speculative or imaginary. It's happening right now, maybe to plaintiff's parents' children. All right, if I might turn to the merits. I do want to emphasize that most of the transition guidelines of the board deal with what is happening and how to treat a child who has already transitioned. Those are not the parts that we challenge here. We're challenging the parts of the guidelines that deal with whether a child will transition in the first place. The policy requires school personnel to allow a child, upon the child's request, to use a name and gender other than those supplied to the school by the child's parents and not to tell the parents what's going on, even to the extent of deceiving the parents about it by reverting to the child's birth name and gender and hiding those files, as I mentioned earlier. Counsel, could I ask a question on the merits? You referred to the right of your parents to be involved in the raising of their children and that right in your brief site cases that talk about the way the Supreme Court has described that right as fundamental. I think that... I appreciate that argument. Here's my question. There's two questions. One is, do we look at that as the right, the right to be involved in the upbringing of the children, or do we have to go a little more specific to what's actually factually happening here, such as the right to information from school either about a transition matter or about important matters relating to the rearing of your children? So, is it just this general right to be involved in the upbringing of your children, which is one thing, or is it to receive information from the school about that? It's a little more specific than just the general right to receive information. It is the parents' right to make life-changing decisions for their minor children. But wouldn't it have to be the... I mean, because the policy doesn't prohibit that. It might infringe on that because it keeps information from the parents. I understand that. It seems like it might. I get the point, but I'm wondering whether it's the real thing that's at issue here is the school withholding information. That's certainly part of it, and it does infringe on that constitutional right. I've got the plan in front of me. The part that seems to fall mostly within the fundamental right is the school says it will develop a transitional plan with the student, and it will not engage the... It says matters of gender identity can be complex and may involve familial conflict. So in order to avoid that familial conflict, they'll develop a plan that the student controls whether it goes to the parents or not. The student says if the parents aren't supportive, the plan will not be shared with the parents. And then the plan is quite involved. It talks about half a dozen different steps that will be taken under this transition plan. Correct, Your Honor. I gather your argument has to be that this whole process of developing a plan with a student and with not the parents is not the role of a public school or the state, but is the role of the family. Yes, Your Honor. I hope we made that point in our briefing. I know, but you were sort of talking about it's just the fact that they're excluded from the parents. The fact is they've taken over the whole role of creating a transition plan with the student without the input of the parents. And violating the instruction the parents have already given about what the name and gender of their child is, changing that with them. Well, that's just part of the plan. I mean, the gender, the records, the various participant school activities, the bathrooms, that's all discussed in the plan. The point being, though, is this is not curriculum. The point is that this is a major life decision that should involve the parents. Exactly, Your Honor. And the Supreme Court has said it's not the right of the student, it's the right of the parents. That's the fundamental right. Correct, Your Honor. And just to continue on this, I want to make clear that we're not saying that every time a child has a discussion with a teacher it has to be reported to their parents. But picking up on what you were saying, Judge Niemeyer... Well, if it goes to medical, somebody comes in, some student comes in and says, I'm severely depressed. I can't do my work. I'm vomiting, all kinds of other things. It seems to me there is a duty at that point for the school to stay out of it and call the parents or refer the student to a counselor in the first instance and then the parents or notify the parents because that whole role is a parental role. It's not the teaching. Now it's taking care of the child. That's correct, and that's reinforced by Maryland statutes. Let me follow up on that. I mean, I assume I agree with you and Judge Niemeyer in terms of what that is. Do we have to look, kind of following recent Supreme Court decisions about substance abuse process, do we have to ask ourselves whether the school's responsibility to provide information like we're talking about here or medical information like Judge Niemeyer just used in a hypothetical, do we have to ask whether that is rooted in the history and traditions of our nation and was in place at the time of the 14th Amendment was passed? That is certainly something you look to for fundamental rights, but the Supreme Court has already said the parents' right to control the upbringing and care and medical decisions of their minor children is rooted in those traditions. So I guess I think you're right there. So that begs the question of what's the right, and if it's the right as you describe it, it may already be established by precedent. If it's the right to get the information from the school, it may be a different question. Do you agree with me on that? I'm just trying to figure out how you frame the right becomes pretty important, doesn't it? I think you're asking the question of when is it that the school has to inform the parents of what's going on, and I just want to make clear that we're not saying that every single conversation between the teacher, but when the school takes active steps like are provided in the guidelines to help a child transition, that is when this duty comes forward. It seems to me that's your argument. The information business is not the right. Maybe it is a right, but the fundamental problem is the school is usurping the role of the parents in handling this whole situation. Now, what aggravates it, of course, is that they treat the child as having the fundamental right and exclude the parents, but the point is the plan actually activates a relationship between the school and the child, and there are all kinds of rules that the plan provides as to how they handle it. They talk about counseling. They'll meet. They'll develop a plan. They'll talk about transitioning. And the intake form, Your Honor. Yes, an intake form. Does everyone have to do a support scale 1 to 10 judgment call of how supportive the parents are going to be, what supportive isn't defined, and what number you have to get in order to get access? All of this relationship, they define the privacy policy saying it's controlled by the kids, and it says may constitute confidential medical information and disclosing this information to other students, their parents and guardians, or third parties may violate the policy. I mean, the question is it's not just informing them about a child who said I want to transition. It's they're taking an active role meeting with them. It says the principal should develop a plan to ensure the student has blah, blah, blah, blah. Yes, it's required. And they talk about meeting with the students and keeping things confidential. They're trying to obviously create a safe place for a student, but they're nurturing the child in order to allow the child to select his transition and have a plan for it without parental involvement. And it's not knowledge, it's involvement. And may I follow up on that just for a moment, Your Honor? Please. You know, they repeatedly try to take refuge in the guidelines saying we handle this on a case-by-case basis. But when it comes to whether a child transitions in the first place, that is decidedly not true. It's a one-size-fits-all. If a child could be as young as six or seven, someone said I feel more like the other gender, this policy requires the school to help that child transition. Right then, automatically. I know, but even if they didn't require it, they suggested or they led the child and they treated the child differently, it seems to me it's not the role of the state to get involved in gender dysphoria type of issues. It seems to me that when this arises, it's not the state that makes those decisions, it's the parents. And the problem with this plan is the state has usurped that role. The school has usurped that role. Not only usurped it but has excluded the parents on the policy that there will be a conflict in the family. They talk about conflicting problems. And the school justifies it if the student says my parents won't accept this or my siblings won't accept this. And, of course, that's not an acceptable interest. It doesn't matter. The fundamental right, when we interfere and take children from the home or impose the state's requirement on top of the family's decisions, we go through a very elaborate process under the subject of due process law. And we have to show abuse, all kinds of other things, and it's a very sensitive subject, very difficult subject. And we do remove children from homes when there are unfit circumstances. But we start out with the proposition that this is a family matter for the care and custody of the family and not the school. And I'll question the other side, but it seems to me the district court got off and thinking this is a curriculum issue. And I can't see anything in this policy that talks about curriculum. All I can say is amen, and I'll save my rebuttal time. I thought you might. All right, Mr. Jonesville. Good morning, Your Honor, and may it please the Court. Judge Niemeyer, I want to address all of your important questions, but if I might start with standing and Judge Quattlebaum's questions. I think you framed the standing inquiry and the question exactly right here. I think Clapper controls this case and not cases like Northeast Florida and parents involved. So Clapper rejects what was the Second Circuit's objectively reasonable likelihood standard as inconsistent with controlling standing law. There needs to be a risk that's imminent and concrete. And I think all plaintiffs point to here is what they determined as an objectively reasonable likelihood. They rely on a Washington Post article that talks about 300 plans for 159,000 students. Except the policy's in place. It's operating, and the question is who it affects. Parents won't know. And it's quite distinct from a circumstance where the policy is deferred or only applies to one little group of students. This applies to the whole student body. It has requirements imposed on every student about not bullying, not discriminating, and it has policies about disclosures to other students and not to the parents. This is not a hollow suspect. It's actually in effect, and it's actually. So I understand the question, Judge Niemeyer, and I want to get to it because it's about how plaintiffs' claim is characterized. But just to complete the thought on Clapper and go back to Judge Quattlebaum's analysis, I think, again, Clapper is precisely the circumstance that you just described, Judge Niemeyer. 1881 was in effect. The United States was surveilling, and the question was whether the plaintiffs had standing. And the court said speculation that the petitioners would be targeted when they have no actual knowledge, that's the language of the court, that they were in fact being targeted didn't give rise to standing. And more importantly, and I think this is where the policy and Clapper are really on all fours, is in that case the statute, quote, at most authorized, but doesn't mandate or direct surveillance. They don't even know whether they're being surveilled. The same was true in Clapper, Your Honor. This is the whole society. This is a school where they know the policies in effect. I understand the point, but the same was true in Clapper, right? There was a statute that allowed for targeted surveillance in certain circumstances, and the question was whether those plaintiffs, they were lawyers and human rights activists, were being targeted by the surveillance. And the Supreme Court said, look, there's no actual knowledge. There are no actual facts pled in the complaint that they are being targeted by the surveillance. And in the absence of those actual facts, there is no standing. It's not enough to say the policy exists, and there's an objectively reasonable likelihood that we are going to be targeted by it. Or maybe you could distinguish parents involved. Sure. So parents involved, I do think it's relevant that it's a race discrimination case, because as I read parents involved in also northeast Florida, those are both cases that involve competition for a limited number of spots. And what the court says in those circumstances is, being required to compete amidst the imposition of an impermissible characteristic or criterion gives rise to standing. What the court rejects in those cases is a but-for element for standing. In other words, the plaintiffs in those cases didn't need to prove that but-for, the use of the impermissible criterion, they would gain admission to the contracting relationship in northeast Florida or the school. But they had standing because they had to compete. I think the language the court used is, they are already subject to a regime where they are competing on the basis of race. I wasn't sure how to read that. The court seemed to have an alternative ground. It seemed to be saying, this policy applies to all the children in this school system. It doesn't matter that it may not actually be the decisive factor, the race may not be a decisive factor that injures a particular child. So they have standing. Moreover, they say some, I don't know if it's exactly the word moreover, but they say some word that suggests an alternative reason. And then they explain that we've already said in previous cases that having to participate in a race-based system itself is an injury. And I know you're talking about that second one, but you're saying that that defines the entire discussion. That the court wasn't recognizing two reasons why the students had standing. That's how I read it. And I also think to the extent that the suggestion is that they are students in the schools and they may be subject to the policy in the future, would independently give rise to standing. They're not subject to the policy in the future. The policy is active and operative to every student. And there are various aspects of the policy that every student has to follow. And it has an open invitation, encouraging any student who feels some sense of dysphoria to get engaged in this activity with the school without the parents involved. And I'm happy to come back to the standing question. But I just want to... It's not a hypothetical policy. It's actually being engaged in. And it has aspects of it that are applied to all students on a current basis. So with respect, Your Honor, I don't think that is what the plaintiffs are challenging in this case. The briefs before this court and the complaint are very specific. That they are challenging what they call the parental preclusion policy. That's it. In fact, in their reply brief, they say explicitly they fault us for defending the guidelines writ large as opposed to addressing specifically the parental preclusion policy. I don't read the plaintiffs in this case to challenge the entire construct of the policy, which allows for... And they don't purport to. But what they do challenge is the usurping of the parental role. But if that's right, then they don't have standing. I mean, I agree with you. For sure they do. I understand that we may disagree on this point. No, the school says anybody in this school who senses that they may have some sense of dysphoria, we're not comfortable with your gender, you can file an application and we'll engage in a private relationship and create a plan for you without your parents knowing. Now, it seems to me that I don't care how you characterize it, that plan is operative, that invitation is open, that the student can be encouraged when otherwise would not be encouraged to do something that the parents would not agree with. So I disagree. Which is also part of the policy to exclude the parents in order to encourage the students to get this separation, conflict with parents, as the policy talks about. So I disagree with your characterization, and I'm happy to address that in a moment. Well, every one of them comes right out of the policy. I understand that. But if your point is that what is present right now is an invitation to engage with the school, I don't think an invitation gives rise to any standing. There's no constitutional right or any right. Don't parse it. Let's talk about the whole policy. It's several pages. But I think I need to parse it because I need to identify what their injury is. So what is their injury? It's basically interfering with the parental right, the fundamental right, probably one of our most fundamental rights. The Supreme Court goes out of its way to talk about how fundamental this right is in history and throughout our jurisprudence. We don't usurp a family role, and the school is trying to step in the shoes of the family and create transitional plans, encourage the child, help the child, keep information secret, change pronouns, change the activities, the roles of the activities and the various activities in the school, all without the input of the parents. I don't think the input of the parents saves the game, myself. I think it's the displacement of the parental right. It's not an educational right. I understand your view of the policy, for sure. There's no allegation of interference and there's no allegation of displacement, in this case, by these plaintiffs. If you go ahead, sure. If you go ahead, right. I think that's the issue. There is no allegation that right now these parents are being affected. They're talking about gender identity may involve familial conflict. That justifies their keeping the family out. They say that again and again, that type of thing, but here they actually use familial conflict. So the policy is trying to avoid familial conflict over gender. Now, tell me where the state gets the right to address that issue at all. I'll answer your question. I want to answer it dead on, but just to tie it back and maybe finish up the circle on standing. There is no allegation that any of the rights that you've just described, and I disagree with you that those are rights that exist or rights that are interfered with. There is no allegation of interference of those rights by these plaintiffs. The only allegation is that they are among the parents of the 159,000 students in the schools. Their injury needs to be individualized and not generalized, and it needs to be imminent and concrete. Why isn't the, I mean, to compare this to the national security cases, there isn't this allegation. I think the parents have pled that the policy does the things Judge Niemeyer is talking about, and to every student, it creates almost an invitation to participate in this. Now, maybe, I mean, I get the point that there's not an allegation that that's happened with their children yet, but does the fact that the policy, at least as alleged and maybe as written, invites that type of activity, distinguish this from the cases in Clapper? I don't think so. So, first off, in Clapper, I think that allegation was made, right? The allegation was, we are retreating from our zealous representation of our clients because of fear of surveillance, and the court said that that wasn't enough. That's, you're right. A choice to do, that's the different point. The point is, right now, every student in Montgomery County, there's an allegation that the policy, maybe, is an invitation or encouragement. Yeah, there's no allegation to that effect. There's no allegation that they are being encouraged to do anything. The allegation is that, in certain circumstances, where through this student-led process, a student devises a transition plan, information is being kept from the parents. Assume, I think, that the allegations reasonably imply that. Is that, I mean, or hypothetically, assume we have that allegation. I don't think so. I mean, there still needs to be an allegation. I think you know where I'm going, which is, why wouldn't that make a difference? I should have let you complete the thought, I apologize. I still don't think it would make a difference because there still has to be an allegation of an injury in fact. If their allegation, for example, was, we're being alienated from our children because of the existence of this possibility, and there is actual concrete facts that they could plead that they're being alienated from their child. They don't allege they've discussed the policy with their children. They don't allege that they've discussed the question of gender transition and the existence of this policy is having an effect on the way that they present those issues to their kids. Would you agree their standing if they said, look, the state has no business doing that. The school district has no business doing that. So now I have to go in and start talking about gender identity issues way earlier than I think is appropriate as a parent. And that's directly affecting my ability to parent. If they could plausibly allege that they are having conversations with their children sooner than they otherwise would at younger ages because otherwise these issues are going to be introduced to them in school, maybe they could allege Article 3 standing. I still think that the claim fails. But I think under those circumstances, if it were a less attenuated chain of events, then potentially there's Article 3 standing. But again, to go back to Judge Niemeyer's characterization of their claims, I read their complaint and their briefs in this court to be explicit that they are challenging the parental preclusion policy and they've never deviated from that characterization. Well, that's part of the policy. That's the part they're offended with. In other words, if they were known about it, they could object, withdraw their child from the school, do whatever they wish. But the basic problem is they allege they're kept in the dark. Well, they know about the policy. So if their theory is if they're so offended by the existence of the policy... That's what they're challenging. But then they can move their kids to a different school, right? If the theory is that we have the right to direct... But that doesn't mean they're not being injured. In other words, I believe that the very establishment of this relationship between the school and the students under this policy is in and of itself inherently interfering with the parental rights. I understand your position, and I understand the way... I'm just saying whether we engage the fundamental right under the Constitution. Now, whether they articulate each legal reason, they have challenged this policy as interference with their parental rights. I believe that they've... You're saying, oh, since their child isn't transitioning, of course, they don't know that. But their child hasn't invoked the policy, and they don't know whether that's so. They can't sue. And my suggestion is that when we have the policy in place concededly, the policy tells students how to accommodate transgender. It invites students to participate in the program. It invites them to do a plan. It allows them to exclude their parents. It justifies it on the fundamental right of the child, not the parent. And recognizes that there will be parental conflict. So I think all of the things that you've just listed as features of the policy are not ones that they challenge. The only thing I understand them to challenge, and again, they're quite specific about this, is what they call the parental preclusion policy, which is in particular circumstances where a student has... Isn't that just a gate, the whole thing? I don't think so. I mean, if what they object to is the policy and their submission to the court is, I have a right to direct the upbringing of my child and the existence of this policy is interfering in it because of, as you describe it, Judge Niemeyer, there's an open invitation. What the Supreme Court recognized in Meyer and Pierson... Here's an allegation that says, issues regarding whether and how children perform a gender transformation are of fundamental importance, and their improper handling could have long-lasting negative ramifications for a child's physical, mental, and spiritual well-being. That's an allegation. So I read that to be in the service of a claim that they're entitled to information about that. I think, you know, I would appoint the court to... I think you're splitting hairs. It seems to me their whole purpose here is to challenge this policy. Well, so I'm happy to defend the policy on the merits. I respectfully disagree with you. I think the challenge is somewhat narrower. But with respect to the merits question, again, Judge Niemeyer, to go to your set of claims, there are plenty of cases that deal with intimate matters addressed at schools and other public facilities for minors where the court has considered precisely the question you are positing, which is, does the provision of counseling and pastoral care to a student or a minor contravene a parent's right under Troxell and other cases to direct the upbringing of the child? There's not a single case that concludes that way. Onstock in the Third Circuit, Arnold in the Eleventh Circuit, Reardon in the Eastern District of Michigan, the Sixth Circuit's in-bank decision in Doe v. Irwin, all of them address questions of the utmost intimacy for a minor. And all of them say there is no obligation to inform parents about these decisions, and the only place where... But that's not... informing is not the point, right? They're complaining about informing the parents because it's the parent's decision to make, right? And this policy says the school will decide to transition the child and we won't tell the parents and let them decide because we think they would disagree with the state's decision. So I disagree with your characterization of the policy, and I think it's a critical one. All of those cases, by the way, address the informational piece, but they all hold that there's no violation of the parent's fundamental right by helping the child procure an abortion, helping the child procure emergency contraception, alienating the child's affections from the parent because they're dating a particular person the parent disapproves of. But Judge Rushing, to go to your point, there's no allegation in the complaint, and there's nothing on the face of the policy that says that the school is making any of the decisions here or directing the process. There's no coercion. There's nothing prescriptive. Who's deciding? The child is deciding. The policy makes clear... substantial life decisions, that someone decides for them, someone counsels them, and the fundamental right to make that decision for a minor belongs to the parents. The Supreme Court has told us that. And so at least they have alleged, right? The question here is only have they alleged that that fundamental right has been infringed when the school says, we think the parents will disagree with this decision, so we won't tell them. So I don't think it's when... I think it's when the child says that they're entitled to some privacy and don't want to disclose the information to their parents. This policy applies to six-year-olds and five-year-olds, doesn't it? I think it applies to all students in the school. It's not an as-applied challenge. It's a facial challenge. And so they need to demonstrate that it's unconstitutional in all its applications in order to prevail here. This is not a case where the school is saying that in particular circumstances, a particularly young child was subject to the compulsion... Right, but the force of Supreme Court precedent is against you when you say, this is the minor's right. The minor is choosing. Yeah, I'm not sure what specific line of cases you're talking about, but in the abortion context, the Court recognized that minors have the right to obtain an abortion. Obviously, this was pre-DOBS. And under certain circumstances, the state could impose particular requirements for parental notification or parental consent under particular circumstances. But it recognizes that minors have a right to privacy in making intimate choices. The constitutional right is the right to... or was the right to obtain an abortion. And minors had that right, just as people who were not minors had that right. When you're talking about, in a school setting, how the school is going to go about counseling a child who presents with a particular set of issues, it has always been the case that schools are able to provide that sort of counseling. And there's no allegation here, as in the cases like Arnold and others, where there was a real set of allegations or ruin in the Third Circuit, that school personnel crossed the line by coercing students, imposing their will. In Arnold, the school forced the child to get an abortion against her will, forced her to work menial jobs in the school against her will to pay for the abortion. And that was where the Court said, look, counseling a student is permissible. Kids present with all sorts of issues in schools, and schools need to be able to handle it. And schools... I hear the allegation is, this policy says we will not tell the parents a decision about the upbringing of their child because we think the parents will disagree with it. That's the policy. Right. And so, again, I don't mean to split hairs here, but I think it is important that in those circumstances, the student is saying that right now, I want this information to be kept confidential from my parents. Yeah, but you've got... I mean, that has two problems. I mean, first of all, the problem Judge Rushing has talked about about minor children making decisions on that. I mean, I hear that you have some pre-dobs cases where facilities, where medical facilities don't have to turn over information. But for schools to engage in this role... I mean, in the policy, it seems... I don't see how you can walk away from the fact that the policy clearly says they're not going to provide the information if they deem the parents are not supportive. And, I mean, just think of what that means. I mean, that's one of the most broad things that the parents might be not supportive as a basis. I mean, I get the standing issue, but to somehow say that this is not a decision that keeps the most fundamental decisions out of the parents' hands and into the school, I just think you're ignoring the plain language of the policy. I think if you don't... If they're standing... I mean, this is as fundamental as it gets. If it's... You know, standings might be a challenge. So I think, respectfully, I disagree with you, and I think the cases that I've discussed all speak to that. And I don't think they turn on the fundamental right to obtain an abortion. I think they all address this issue in the same line of cases that plaintiffs are pointing to, Meyer, Pierce, and Troxell. In those cases, the same allegation was made. Public officials, school officials, officials at public health centers are arrogating to themselves the role that is traditionally reserved to parents. They are doing it by facilitating a child from getting an abortion, facilitating a child from obtaining the morning-after pill, I think things relating to sexual abuse or assault, all of those things that go to the heart of what a parent wants to know about their kid and wants to handle. All of the courts rejected the sort of Meyer-Pierce substantive claim and said, and I think the language of Anspach is particularly helpful here. This is the Third Circuit's decision. It says, the real problem alleged by plaintiffs is not that the state actors interfered with the Anspachs as parents. Rather, it's that the state actors did not assist the Anspachs as parents or affirmatively foster the parent-child relationship. Here, for the same reasons, there's no interference with what the parents do. The parents are free to do whatever they want at home to counsel their kids. That's the whole point. The whole point is that the school is displacing the parent. They're not telling them because they don't want the parent. They don't want the parents to interfere. The school is not telling the parents because they don't want the parents involved. It's not as though, sure, I understand your point that the parents can talk to their kids about gender transition and transgender issues until they're blue in the face. The parents can talk all day about it. But if the parents aren't told that a decision to transition their child is being made, they can't be a part of the decision. So, if you're right that that is the gravamen of the claim, then the question, and I think this goes back to Judge Quattlebaum's question about the level of specificity of the right we're talking about here. If that's the gravamen of the claim, and that's how I understand it as well, then the question is whether parents have an affirmative constitutional right to disclosure by a school about these issues. And there is no such right. Do they have a right to the school not to hide it from them? For the school not to hide the fact that a decision is being made. Even if that's right, I still think there's no affirmative constitutional right to that. Look, as a matter of common sense, as a matter of democratic legitimacy for school boards across the country, they may decide something different from what Montgomery County has decided. As a matter of constitutional law, however, there is no affirmative obligation on a school board to disclose that sort of information to parents. To tell parents that the state is arrogating to itself the right to make decisions about your child's gender. The policy is not secret. Everyone knows what the policy is. The question is if in a particular case a student tells a school teacher that they want to transition at school and that they don't want to disclose that information right now to their parents in a policy that, number one, has as its end goal the integration of families into this discussion. And number two, is subject to constant revision and consultation with the student. If in those circumstances the school decides in concert and in furtherance of the student's wishes that it's not going to disclose that information at that point in time, there is no constitutional right to the contrary. There are lots of circumstances. And we point to the Maryland state law in all of these. In cases of abuse, in cases where a student is dealing with an abortion or a pregnancy, and in cases where a student is dealing with issues related to drug addiction and the desire to overcome drug addiction, Maryland state law doesn't allow a school to disclose that information to a parent unless the student consents. This is no different. And the school has the discretion to formulate that policy. Obviously, schools are free to formulate different policies. But the question here is are you going to constitutionalize the obligation of a school to provide this information? You keep putting a flip thing. What you're doing is you're concealing it. You are usurping the care and custody of the children, which is not curricula. It is counseling and helping a child transition without the parent's involvement. This is a family decision. And it falls within the fundamental process recognized for centuries. And it seems to me that it's not a question of affirmatively disclosing. It's a question of concealing. So if that is correct, and I hate to go... I don't think that solves the problem. But that's the gate to the problem. In other words, the problem is the role of the state in promoting transition of children. They're supposed to be teaching children. They're not supposed to be engaged in the transition of gender. So a couple of thoughts. The first one is, with respect to the concealment, I think, again, not to sound like a broken record here, but that really does underscore the standing deficiency. There's no allegation that anything has been concealed from these parents. Or any parents. There's no allegation... Sure there is. The whole policy has it built into it. And there's no suggestion that the policy's not being followed. As a matter of fact, there's allegations that the policy is in effect. There are allegations that the policy is in effect. The Washington Post article they refer to... Well, I don't need the policy... Isn't the... If they had asked... If they allege they've asked for the information and we're not going to tell you, I mean, isn't that an allegation of concealment that's happened right now? So there is no such allegation. They've never said they asked anything about any of their kids. I didn't ask that. Yeah, no, I understand. So if they made an allegation, I mean, we don't know what would happen, right? We don't know if they went to the school and they said... You're saying, look, I want to know, parent, at school, this is important to me as a parent. I want this to be my decision with all due respect and not yours. And so I want to know if there's ever any, you know, inquiry from my student, anything at all, will you commit to me to tell me that? And the school says we can't do it. We have a policy that says if we determine it might be, you might not be supportive, we're not going to tell you. So we can't say in advance. Is that, you know, enough right then that they've been told affirmatively that it's going to be concealed? I'm not sure. And I don't mean to fight the hypothetical here. I don't know the answer to your hypothetical. But what I will say is it is not the case that with every gender transition plan, information is being concealed from the parent. And so the answer to the question very well may be, I'm teaching Alan. I know him well. I'll have a discussion with him and I'll talk to him. And if he devises a gender transition plan at school, we'll have a discussion about it. And if he tells me that right now he doesn't want to disclose that information to his family, he wants it to happen in a month or two months from now, I'll honor that request to keep that information confidential for a time. That is what schools have been doing with respect to all sorts of existential issues for students. I can't wait. Can we infer from the allegations of the complaint about the policy that if a parent has to call the school and ask whether their child has one of these plans, then the school will say, we can't tell you, right? I don't think that's a fair inference. Well, let me explain my thinking here that the policy says that if a parent is supportive, we're going to include them in devising the plan and so forth. So if a plan existed and a parent were supportive, they would know about it already. So if they have to ask the question, then the response is either, yes, your child has a plan and we're not going to tell you, or no, they don't have a plan. But you have to say, the answer in both of those situations from the school has to be, we can't tell you. I think the answer could also be, you should talk to your kid. Right, which is, we're not going to tell you, talk to your five-year-old. Sure. Again, I don't... Well, the plan has that explicitly in there. The plan has a section called Privacy and Disclosure of Information. And it says, basically, it cannot be disclosed to the parents. And it says, the fact that students choose to disclose their status to staff members or other students does not authorize school or staff members to disclose a student's status to others, including parents, guardians, and other school staff members. So... And for higher up, it says that this information is confidential even from parents. I... That's not how I read that language. I think that when the student... Well, I was reading the language. No, I understand that. But when the student provides consent to share this information with the parents, obviously it can be disclosed to the parents. Disclosing this information to other students, their parents, slash, guardians, or third parties may violate privacy laws such as the Family Education Act, and so forth. Right. I read, their parents, guardians, to modify other students, which is the immediate preceding phrase. So what it's saying there is that FERPA prohibits the disclosure of a kid's transition. That's absurd. Nobody cares about the other student's parents. It's the student involved. No. So I read that language there to say disclosing this information about a student's gender transition to other students violates FERPA. Disclosing that information to other students, parents, or guardians also violates FERPA. Students are entitled to some privacy, including with respect to issues related to gender transition. And all this policy says is that it's going to respect the student's wishes about who gets to know this information. And so in order for there to be something wrong with that policy, the parents need to identify a substantive due process protected right that gives them an affirmative right to that information, or Judge Niemeyer, an affirmative right. I mean, I understand your point that it's not about not disclosing the information. You keep focusing on an affirmative right to disclose. That's not even alleged in the complaint. The complaint is there being, it's being kept secret. But setting that all aside, you've got to understand that this plan authorizes and encourages the development of a transitional plan with actual transition without the engagement of the parents. Now the question is, is this something the school ought to be doing? So I think that the case law supports schools. I understand you say because they've supported an abortion in one state and another place. No, I think what those cases recognize is that, and I think this goes to another one of your questions, and I also realize I'm way over time, so please cut me off whenever. Judge Niemeyer, I think this goes to another sort of series of questions you raised, which is about what is the proper office of a school? And I think it goes beyond curriculum, and I think the district court's decision recognizes that. But there's a line of cases that addresses things that go from curriculum to compulsory community service, as in this court's in Herndon, to mandatory condom distribution in the Massachusetts Supreme Judicial Court's decision, and Alfonso in the New York Appellate Division. I think everyone recognizes that schools do things that go beyond the strict curriculum of the school. And the same line of cases applies to all of those. Where courts have drawn the line between permissible provision of educational services, which includes counseling, and I think the courts have been really explicit to call out that schools are entitled to provide counseling, and limitations on what schools can counsel on are a matter of democratically enacted policies, school board policies and constitutional policies. Where schools cross the line is where schools impose their will to the exclusion of the parents, where they coerce or manipulate. And there is no allegation that anyone in Montgomery County has ever coerced or manipulated a student into an outcome that the student did not himself. So you have an 11-year-old student making a decision, a life decision, with the guidance of the state and not the guidance of the parents. That's what it comes down to. So I think it comes down to a student presenting at school with a particular set of issues or concerns, and the school trying to provide support for that, even if that means four times... More than support. More than support. Actually adopting a transition plan. Well, I think the transition plan is meant to provide support. It accomplishes a transition that the parents have not participated in. I think it's a way of reflecting a transition. We don't know what the parents have participated in. If a kid comes to school and says, I don't tell my parents, and I know my parents won't like it, so don't tell them. The school says, fine. I think as a matter of school board policy, the school is entitled to enact that policy, and the question is whether parents... That's the issue in this case. Right, and I think the question is... The difficulty in my pushing back is that we need to face the issue head on. We don't need to look at collateral issues that this is an obligation to inform parents, or this is a counseling issue. This is a plan to adopt a transitional... Transgender plan to a young student at any age from 11, 15, and of course during that period, science shows that people's gender likes and dislikes and functioning change a lot, and so the school's making that decision with the child, and the parents are being left out. I understand, Your Honor. With respect, I've been litigating this case for three years. That's never been the way this case is framed. I don't read this to be a challenge to the school's ability or power to adopt this kind of policy. I read it to be a challenge to the existence of a provision that keeps certain information from the parents confidential at the student's wishes, so I think it is a narrower challenge. I understand completely that the two issues are related, and where I see the connective tissue is where the parents say, I need that information in order to be able to exercise my fundamental right under Troxel and other cases, but I have always read this case to be a challenge. As Montgomery County Board of Education, this is the complaint. Has violated these rights, fundamental rights, by adopting a policy expressly designed to circumvent parental involvement in a pivotal decision affecting the parent's, plaintiff's parents, minor children, care, health, education, and future. And I read the circumvent... That's their allegation, the complaint. And the cabinet, too far, is just being unfair. I hear you, Your Honor. I think it is a fair characterization of the complaint. Including that allegation that it challenges the confidentiality provision. Because the whole notion of circumventing parental rights is that parents are excluded from it. This is not a challenge. I mean, if you had a circumstance where a parent was involved, but still disagreed with the school about what was happening, that would be a very different challenge. And that's not the challenge here. The policy doesn't include that possibility. The policy anticipates parental conflict, and therefore excludes the parent from the conflict when the family conflict should be relegated to the family to solve. So that's not how I read that language. I read that language to acknowledge that there may be circumstances of parental conflict. Sure. In which case, the student may make the decision to keep the information confidential. Well, if the student works with the parents and tells my parents, today I was at school and I signed a form, and the parents say, well, let's look at it, and so forth, that's not what we're talking about. What we're talking about is the policy as written, which gives the student the decision-making to keep the parents out of the whole process. Exactly, and I think that's the aspect of the policy that they facially challenge. I think that it is fundamental to their entire characterization of the policy and all of their legal arguments that information is not being kept. I don't read this, and then I'll stop talking. Well, I think we're through the red light here. Let's get back to Mr. Claybrook. Thank you, Your Honor. Just a couple bullet points. First, on standing, I just would remind the Court that the procedural posture of this case is on a motion to dismiss a complaint, and the Supreme Court in Lujan said that general allegations will suffice to support standing in that situation with the assumption that specific allegations can be proven up later with specifics. But in addition to the paragraph that Judge Niemeyer, you've been citing during your questioning, I'd direct the Court to paragraphs 1, 2, and 33 through 43, where we talk about irreparable injury that's occurring right now to these parents. With respect to the curricular exception, I just would make the quick point that that exception has never been stretched so far by any court as to say that schools have the right to keep things secret from the parents about what's going on in school. I'm puzzled by your constant emphasis on the keeping secrecy. You make it sound as if that's the centerpiece of your claim, and it seems to me that when you read the Supreme Court cases and our cases talking about the due process right, it's the right for the care and custody of children that the parents have. It's a fundamental right. We're not talking about... We're talking about something where we've made exceptions to procedural rights and enforcing long-standing substantive rights. And you'd allege them in your complaint, but then you keep emphasizing, well, the problem is they didn't tell us. Well, sure they didn't tell us. They're hiding it because that's part of the policy. But the policy is they're substituting their judgment and their treatment and their engagement in the child in a transition process, and they're substituting themselves in lieu of the parents. And to keep the parents out, they don't inform the parents that the child doesn't want it. That's exactly right. Let me close with that, some comments about that. Under this policy, if a child as young as 6 or 7 says that they feel more like the other gender, school personnel are required to help them make that transition. But not all 6-year-olds or 7-year-olds or 17-year-olds, for that matter, are the same. Each is unique with unique needs, needs that the parents know best, not the child and not the state officials. And this is not just common sense and conventional wisdom. It's required as an assumption, as a matter of law, that parents have the best interests of their children at heart. Now, the assumption on which the parental preclusion policy is based, that children always know what's best for themselves when it comes to sexual matters, is not just wrongheaded. It's dangerous for children. As Dr. Anderson, her amicus brief, points out for exactly this situation. The Supreme Court explained in Parham in words that could easily have been penned for the parental preclusion policy, that the fact that the decision of parents, and now I'm quoting, is not agreeable to a child or involves risks, does not diminish the parents' authority to decide what is best for the child or automatically transfer the power to make that decision from the parents to some agency or officer of the state. The parental preclusion policy is designed to allow a school to circumvent the parent-child relationship. And it invariably does damage to that relationship when a teacher or counselor asks a child, can you really trust your parents about this? Or when a parent has to ask a child, tell me the truth, are you lying to me about whether you are exhibiting as transgender at school? The judgment of the district court should be reversed. Thank you.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Allison J. Rushing